UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE: )<br>)<br>MICHAEL R. MASTRO )<br>)<br>        Debtor. )<br>_____ )<br>JAMES F. RIGBY, JR. Trustee, solely )<br>in his capacity as Chapter 7 trustee of the )<br>bankruptcy estate of Michael R. Mastro, )<br>)<br>        Plaintiff, )<br>    v. )<br>)<br>MICHAEL R. MASTRO and )<br>LINDA A. MASTRO et al. )<br>)<br>        *Defendants*. )<br>_____ ) | BANKRUPTCY NO. 09-16841 (Ch. 7)<br><br>ADVERSARY NO. 09-01439-MLB<br><br>INTERNAL APPEAL NOS. 11-S042,<br>11-S043, 11-S044, 11-S047 AND<br>12-S014<br><br>USDC CONSOLIDATED CASE NO.<br>2:11-cv-02077-BJR<br><br>ORDER REGARDING THE LINDA A.<br>MASTRO APPEAL |

## I.     INTRODUCTION

Before the Court is Linda A. Mastro's appeal from a final judgment entered against her by the bankruptcy court in an involuntary Chapter 7 adversary proceeding on November 16,

1

2011.[1] Having reviewed the briefing by the parties together with all other relevant materials, the Court now enters the following Order.

## II.     BACKGROUND

Appellee James F. Rigby, Jr. ("Trustee") is the Chapter 7 trustee of the bankruptcy estate of Michael R. Mastro. The Mastro bankruptcy was commenced by the filing of an involuntary petition on July 10, 2009. On September 29, 2009, the Trustee filed an adversary proceeding against Mastro, his wife Linda, and other parties in an effort to recover assets transferred into various trusts before the bankruptcy was filed. Trial of the *Rigby v. Mastro* adversary proceeding took place on various dates between April 19, 2011 and July 1, 2011. Mastro did not appear or testify at trial. On joint motion of the parties, the bankruptcy court entered an order stating: "Michael R. Mastro is deemed to have been called as a witness by the Trustee and to have declined to answer questions and provide other information based on his Fifth Amendment right against self-incrimination with the same effect as if he had appeared at trial and done so in person."

On June 20, 2011 (while the trial was still in progress), the bankruptcy court ordered the Mastros to turn over two large diamond rings appraised in excess of $1.4 million. The Mastros refused to do so. On July 12, 2011, the bankruptcy court granted the Trustee's motion for sanctions against the Mastros. The Mastros were ordered to pay a monetary sanction and were again ordered to turn over the rings. The Mastros again refused to comply. On July 18, 2011, the bankruptcy court entered a second order granting sanctions against the Mastros. The court ordered the Mastros to appear in person on July 27, 2011 and show cause why additional sanctions, including incarceration, should not be imposed for their refusal to comply with the

---

[1] *Rigby v. Mastro* (*In re Mastro*), 465 B.R. 576 (W.D. Wash. 2011).

court's previous orders. The Mastros continued to defy the court. They refused to appear at the scheduled hearing and continued to refuse to turn over the rings. On July 28, 2011, the bankruptcy court entered a third order granting sanctions against the Mastros. Pursuant to that order, it also issued bench warrants for their arrest.

On November 16, 2011, the bankruptcy court entered judgment against Linda Mastro. *Rigby v. Mastro (In re Mastro)*, 465 B.R. 576 (W.D. Wash. 2011). During trial, Mrs. Mastro testified that she did not know the location of the two large diamond rings. *Id*. at 589. She testified that she had given them to her husband because she "was sick of those rings" and that her husband would not reveal to her where they were located. *Id*. The bankruptcy court found "Linda to be a witness lacking veracity as her testimony was often transparently vague, contradictory, and self-serving." *Id.* at 586-587. In particular, the court found that at the time of Linda Mastro's testimony, she "still held the rings…knew where the rings were and had joint control" of them with her husband. *Id*. at 589. The court entered judgment against her in the amount of approximately $1.3 million. It also ruled that all property owned by the Mastros prior to the bankruptcy, including all gold, jewelry and household property, was property of the bankruptcy estate. Mrs. Mastro was ordered to turn over all such property to the Trustee. She filed a notice of appeal of the judgment on November 30, 2011. The Mastros did not appeal the arrest warrants or the bankruptcy court's orders granting sanctions against them.

The Mastros fled the jurisdiction on or about July 21, 2011. The U.S. Marshal was unable to locate the couple until October 24, 2012 when they were located and arrested by French authorities near Lake Annecy in the French Alps.[2] Recovered with them were between 75 and

---

[2] *See* http://www.fbi.gov/seattle/press-releases/2012/michael-and-linda-mastro-indicted-for-bankruptcy-fraud-and-money-laundering.

200 pieces of jewelry estimated to be worth $3 million.[3] Among the pieces were the two large diamond rings. The Mastros remained in jail for seven weeks before they were placed under house arrest.[4] Criminal indictments have issued charging them with 43 counts of bankruptcy fraud and money laundering in the United States.[5] The couple has hired a French lawyer and is fighting extradition.[6],[7]

### III.   ISSUES ON APPEAL

Appellant presents the following issues on appeal: (1) whether the bankruptcy court erred in declaring that all property of Michael R. Mastro or Linda A. Mastro on the date of the bankruptcy was community property, and that Appellant does not hold any property in a separate capacity; (2) whether the bankruptcy court erred in directing Appellant to turn over gold bars purchased for $99,300; (3) whether the bankruptcy court erred in directing Appellant to turn over seven items of jewelry (including the two large diamond rings); (4) whether the bankruptcy court erred in awarding judgment against Appellant in the amount of $995,106 for all amounts deposited into and disbursed out of the LCY LLC account before and after the bankruptcy filing; and (5) whether the bankruptcy court erred in awarding judgment against Appellant in the amount of $300,000 for the "sale and buy-back" of a Rolls Royce.

The Trustee raises the following challenges to her appeal: (1) Appellant is barred from pursuing the appeal due to the fugitive disentitlement doctrine; (2) the appeal fails to satisfy the

---

[3]   *See* http://seattletimes.com/html/businesstechnology/2020288086_mastrojewelryxml.html

[4]   *See* http://www.bizjournals.com/seattle/blog/2013/02/mastros-house-arrest-eased-fight.html

[5]   *See* http://www.fbi.gov/seattle/press-releases/2012/michael-and-linda-mastro-indicted-for-bankruptcy-fraud-and-money-laundering

[6]   *See* http://seattletimes.com/html/businesstechnology/2019525149_mastro26.html

[7]   This Court may take judicial notice of the material contained within these media articles. Fed. R. Evid. 201(b)(1); *see also*, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994); *Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 458 (9th Cir. 1995) (taking judicial notice of newspaper article describing widespread layoffs at Hughes where the fact of the layoffs was generally known in Southern California).

applicable standard of review; and (3) the judgment against Appellant is appropriate under the relevant laws.

## IV.   DISCUSSION

### A.   Jurisdiction and Standard of Review

This Court has jurisdiction to decide this appeal under 28 U.S.C. § 158(a)(1). The Court reviews the bankruptcy court's conclusions of law and interpretation of the Bankruptcy Code *de novo*, and its factual findings for clear error. *Greene v. Savage (In re Greene)*, 583 F.3d 614, 618 (9th Cir. 2009).

### B.   The Fugitive Disentitlement Doctrine

The Trustee moves to dismiss this appeal based on the fugitive disentitlement doctrine. The Trustee asserts that by fleeing the jurisdiction of the United States, Linda Mastro has waived her right to pursue this appeal. (Dkt. No. 18 at 7.). This Court agrees.

The doctrine of fugitive disentitlement provides that unless a party is willing to submit her case for complete adjudication, win or lose, she is disentitled "to call upon the resources of the court for determination of [her] claims." *Molinaro v. New Jersey*, 396 U.S. 365, 366 (1970). "Escape from federal custody is inconsistent with the pursuit of judicial remedies and constitutes a voluntary waiver of any pending judicial review." *Hussein v. INS*, 817 F.2d 63, 63 (9th Cir. 1986) (internal quotation marks and alterations omitted). The doctrine developed at common law, initially as a means of barring fugitives from bringing appeals in their criminal cases. *See Ortega-Rodriguez v. United States*, 507 U.S. 234, 244-245 (1993). The logic went that a fugitive should not be able to avail herself of the courts to secure the benefit of a favorable appellate outcome when she has removed herself from a court's power to enforce an adverse outcome, for "[i]t is clearly within our discretion to refuse to hear a criminal case in error, unless the convicted

party ... is where [she] can be made to respond to any judgment we may render." *Smith v. United States*, 94 U.S. 97 (1876). In addition to enforceability concerns, the doctrine also rests on the ground that a fugitive should not be able to exploit judicial processes to her advantage in one matter while scoffing at them in another. *U.S. v. $6,976,934.65 Plus Interest*, 478 F. Supp. 2d 30, 35 (D.D.C. 2007) (Lamberth, J.).

The doctrine has since been expanded to bar fugitives from seeking relief as plaintiffs in civil suits, concluding that the rule of fugitive disentitlement in criminal cases "should apply with greater force in civil cases where an individual's liberty is not at stake." *Conforte v. Commissioner of Internal Revenue*, 692 F.2d 587, 590 (9th Cir. 1982) (disallowing fugitive from appealing tax court ruling); *see also Broadway v. City of Montgomery*, 530 F.2d 657, 659 (5th Cir. 1976) (court refused to hear appeal from fugitive seeking damages and injunctive relief from alleged illegal wire tap); *Doyle v. Department of Justice*, 494 F. Supp. 842, 845-846 (D.D.C. 1980), *aff'd*, 668 F.2d 1365 (D.C. Cir. 1981) (disallowing FOIA case brought by fugitive); *United States v. U.S. Commanding Officer of Office of Provost Marshal*, 496 F.2d 324, 326 (1st Cir. 1974) (court refused to hear habeas petition seeking relief from a specific Army regulation where petitioner was at large); *Brin v. Marsh*, 596 F. Supp. 1007, 1009-1010 (D.D.C. 1984) (Richey, J.) (court-martialed soldier who went AWOL and remained at large not allowed to call on court's resources to hear his claim for discharge and restoration of retirement benefits).

The doctrine does not automatically disqualify a fugitive from maintaining a civil action in federal court. *See Degen v. United States*, 517 U.S. 820 (1996). Instead, in the appellate context, the appellant must be a fugitive and her fugitive status must have a connection, or nexus, to the appellate process she seeks to utilize. *Wenqin Sun v. Mukasey*, 555 F.3d 802, 804-805 (9th Cir. 2009); *United States v. Barnette*, 129 F.3d 1179, 1183 (11th Cir. 1997). Whether an

appellant is a fugitive is, in turn, a question of fact involving two elements: (1) absence from the jurisdiction, and (2) intent to avoid arrest or prosecution. *In re Buckingham*, 2012 WL 6044832, *5 (N. Mariana Islands Dec. 5, 2012).

The Court finds that Linda Mastro is a fugitive. She fled the United States seeking refuge from prosecution in France. And, now that she has been arrested, she is fighting extradition. *See, e.g., Maydak v. United States Dep't of Educ.*, 150 Fed. Appx. 136, 137 (3d. Cir. 2005) (affirming the district court's dismissal of plaintiff's FOIA claim after it determined that plaintiff remained a fugitive even after he was arrested and his attempt to avoid extradition failed). In addition, the Court finds that Mrs. Mastro's fugitive status is connected to this appeal. The original bench warrants issued by the bankruptcy court and the current criminal indictments stem from the Mastros' attempt to escape the bankruptcy judgments. Indeed, the very diamond rings that the bankruptcy court ordered the Mastros to turn over (and as to which Linda Mastro denied knowledge of their location) were found in her possession after she was arrested in France. Such blatant disregard for the authority of the judicial system renders her ineligible to pursue an appeal from the orders she is flouting. Linda Mastro's sparse argument against the application of the doctrine—that it is not applicable because she is not a criminal felon—is not only wrong on the law, but wholly unpersuasive. Accordingly, the Court exercises its discretion to abstain from exercising jurisdiction over this matter. *United States v. One Parcel of Real Estate at 7707 S.W. 74th Lane*, 868 F.2d 1214, 1217 (11th Cir. 1989) (noting that a case in which the fugitive doctrine applies is "essentially an uncontested action").

## V.     CONCLUSION

For the foregoing reasons, the Court HEREBY DISMISSES with prejudice this appeal

from the final judgment against Linda A. Mastro entered by the bankruptcy court on November 16, 2011.

Dated this 16th day of February, 2013.

*Barbara J. Rothstein*
Barbara Jacobs Rothstein
U.S. District Court Judge

8